IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CODY L. ADAMS, et al.,                    )
                                          )
          Plaintiffs,                     )          No. 20-783 C
                                          )          (Judge Lettow)
v.                                        )
                                          )
THE UNITED STATES,                        )
                                          )
          Defendant.                      )


DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

                              JEFFREY BOSSERT CLARK
                              Acting Assistant Attorney General

                              ROBERT E. KIRSCHMAN, JR.
                              Director

                              ALLISON KIDD-MILLER
OF COUNSEL:                   Assistant Director

MARIE C. CLARKE               ERIC E. LAUFGRABEN
DOUGLAS S. GOLDRING           Senior Trial Counsel
KATHLEEN HALEY HARNE          LIRIDONA SINANI
Office Of General Counsel     Trial Attorney
Federal Bureau of Prisons     Commercial Litigation Branch
U.S. Department of Justice    Civil Division
Washington, DC 20436          U.S. Department of Justice
                              P.O. Box 480
                              Ben Franklin Station
                              Washington, DC 20044
                              Telephone:  (202) 353-7995
                              Facsimile:   (202) 353-0461
                              Email:       Eric.E.Laufgraben@usdoj.gov

October 8, 2020               Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION ................................................................................................................. 1

ISSUES PRESENTED .......................................................................................................... 4

STATEMENT OF FACTS ...................................................................................................... 5

    I.      Statutory And Regulatory Background ...................................................................... 5

          A.     5 U.S.C. § 5545(d) (Hazardous Duty Pay) ................................................. 6

          B.     5 U.S.C. § 5343(c)(4) (Environmental Differential Pay) ........................... 9

          C.     5 C.F.R. §§ 551.511-12 (FLSA Overtime Pay) ........................................ 10

    II.     The Complaint ......................................................................................................... 11

ARGUMENT ....................................................................................................................... 12

    I.      Standards Of Review ............................................................................................... 12

          A.     Motion To Dismiss For Failure To State A Claim Upon Which Relief
                May Be Granted ......................................................................................... 12

          B.     Motion For A More Definite Statement ...................................................... 14

    II.     Because The Complaint Fails To State Claims For Either Hazardous Duty Or
          Environmental Differential Pay, Counts I-II Should Be Dismissed ......................... 14

          A.     The Complaint Does Not Plausibly Allege That Any Plaintiff Worked
                With Or In Close Proximity To A Virulent Biological Or Micro-Organism 16

               1.     Plaintiffs' Hazardous Duty And Environmental Differential Pay
                    Claims Rely On An Incorrect Legal Theory .................................. 16

               2.     Even Under Plaintiffs' Incorrect Legal Theory, The Complaint
                    Lacks Sufficient Factual Content From Which The Court Could
                    Plausibly Infer That Any Of The 188 Plaintiffs Worked With Or
                    In Close Proximity To "Objects, Surfaces, And/Or Individuals
                    Infected With COVID-19" ............................................................. 21

3.      The Complaint's Allegations Concerning Protective Measures
(Or Lack Thereof) Do Not Illuminate Whether Any Plaintiff
Performed Work With Or In Close Proximity To COVID-19 ............. 22

B.      Plaintiffs' Hazardous Duty Pay Claim Also Fails Because The Complaint
Does Not Plausibly Allege That Work With Or In Close Proximity To
Virulent Biologicals Has Not Been Taken Into Account In Plaintiffs'
Job Classifications ................................................................................. 22

III.    Because The Complaint Fails To Demonstrate Entitlement To Additional
Overtime Pay Under The FLSA, Count III Should Be Dismissed ........................... 23

IV.     In The Alternative, The Court Should Order Plaintiffs To Provide A More
Definite Statement Of Their Claims ........................................................... 24

CONCLUSION ......................................................................................................... 26

## TABLE OF AUTHORITIES

### Cases

*3rd Eye Surveillance LLC v. United States*,
    124 Fed. Cl. 438 (2015) .............................................................. 14

*Acceptance Ins. Cos. v. United States*,
    583 F.3d 849 (Fed. Cir. 2009) ...................................................... 12

*Adair v. United States*,
    497 F.3d 1244 (Fed. Cir. 2007) ........................................... 2, 5, 16, 17

*Alamo v. United States*,
    850 F.3d 1349 (Fed. Cir. 2017) ..................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................ 12, 13, 21, 22, 23

*Bautista v. Los Angeles County*,
    216 F.3d 837 (9th Cir. 2000) ................................................... 14, 24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................. 13

*Jaynes v. United States*,
    69 Fed. Cl. 450 (2006) ............................................................... 25

*Metz v. United States*,
    466 F.3d 991 (Fed. Cir. 2006) ................................................. 14, 15

*Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*,
    522 U.S. 479 (1998) ................................................................. 17

*O'Neall v. United States*,
    797 F.2d 1576 (Fed. Cir. 1986) ............................................. 8, 10, 14

*Principal Life Ins. Co. v. United States*,
    75 Fed. Cl. 32 (2007) ................................................................ 12

*Schmidt v. Dep't of Interior*,
    153 F.3d 1348 (Fed. Cir. 1998) ................................................. 7, 18

*Sullivan v. Stroop*,
    496 U.S. 478 (1990) ................................................................. 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................. 12

*Totes-Isotoner Corp. v. United States*,
    594 F.3d 1346 (Fed. Cir. 2010) ................................................... 13

*Wynn v. Nat'l Broadcasting Co.*,
    234 F. Supp. 2d 1067 (C.D. Cal. 2002) ................................................................. 13

## Statutes

5 U.S.C. § 5343(c)(4) ........................................................................................... 8, 9

5 U.S.C. § 5545(d) ............................................................................................... 6, 20

Pub. L. No. 89-512, 80 Stat. 318 (1966) ................................................................. 5

Pub. L. No. 92-392, 86 Stat. 564 (1972) ................................................................. 6

## Regulations

5 C.F.R pt. 532, subpt. E, App'x A ........................................ 9, 10, 14, 15, 16, 18, 22

5 C.F.R. § 532.511 ................................................................................................. 9, 10

5 C.F.R. pt. 550, subpt. I, App'x A ..................................................... 8, 14, 15, 16, 22

5 C.F.R. § 550.902 ................................................................................................. 6

5 C.F.R. § 550.903 ............................................................................................. 3, 20

5 C.F.R. § 550.904 ............................................................................... 7, 8, 15, 22, 23

5 C.F.R. § 551.511 ............................................................................................. 10, 11

Fed. Wage System Operating Manual, § S8-7e .................................................. 3, 20

Fed. Personnel Manual, Supp. 990-2 § 550-E-4 ............................................. 7, 13, 19

## Legislative Materials

H.R. Rep. No. 89-31 (1965) ................................................................................... 5

H.R. 6655, 116th Cong. (2020) ............................................................................. 20

H.R. 6800, 116th Cong. (2020) ....................................................................... 19, 20

H.R. 7431, 116th Cong. (2020) ............................................................................. 20

H.R. 8406, 116th Cong. (2020) ............................................................................. 20

<u>Secondary Sources</u>

Fed. Practice & Procedure § 1377 (3d ed. Apr. 2020 update) ....................................................... 14

Fed. Practice & Procedure § 1656 (3d ed. Apr. 2020 update) .................................................... 13

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted.  In the alternative, pursuant to Rule 12(e), the United States respectfully requests that the Court order plaintiffs to amend their complaint to provide a more definite statement of their claims.

<u>INTRODUCTION</u>

This suit was brought by 188 current and former employees of the Federal Bureau of Prisons (BOP), Federal Correctional Institution, in Danbury, Connecticut (FCI Danbury). Plaintiffs allege that they performed work "with or in close proximity to objects, surfaces, and/or individuals infected with the novel coronavirus ('COVID-19')," Compl. ¶ 16, ECF No. 1, and that they are entitled to one of two types of additional compensation.[1]  First, under Count I of the complaint, plaintiffs paid under the General Schedule allege entitlement to "hazardous duty pay," which provides a 25% pay differential for each day those plaintiffs were assigned to and performed "work with or in close proximity to . . . virulent biologicals."  Second, under Count II, plaintiffs paid under the Federal Wage System allege entitlement to "environmental differential pay," which provides 4% and 8% pay differentials for periods in which those plaintiffs performed "work with or in close proximity to . . . micro-organisms."  As demonstrated below, the regulatory requirements for hazardous duty and environmental differential pay are similar in that both require each plaintiff to show that his or her duties required "work with or in close proximity to" a "virulent biological" or "micro-organism" itself, such as by conducting research

---

[1]  Although plaintiffs define COVID-19 itself as the novel coronavirus, Compl. ¶ 16, COVID-19 refers to the disease caused by the novel coronavirus.  *See* Ctrs. For Disease Control and Prevention, About COVID-19, *available at* https://go.usa.gov/xGsUE (last visited Oct. 8, 2020).

and experimentation using virulent biologicals or micro-organisms, or cleaning contaminated scientific equipment.  Further, a plaintiff seeking hazardous duty pay under Count I must also show that his or her job classification does not already account for work with or in close proximity to virulent biologicals.

Counts I and II should be dismissed because they are inconsistent with the regulations and unsupported by sufficient facts.  First, the regulations require "work with or in close proximity" to a "virulent biological" or "micro-organism" itself—not, as plaintiffs allege, "work with or in close proximity to *objects, surfaces, and/or individuals infected with* COVID-19[.]" Compl. ¶¶ 25, 30 (emphasis added).  Federal Circuit precedent compels this conclusion.  In *Adair v. United States*, 497 F.3d 1244 (Fed. Cir. 2007), the Federal Circuit construed a parallel provision of the environmental differential pay regulation concerning "work[] with or in close proximity to . . . toxic chemicals," and held that it did not apply to work with or in close proximity to people who emit toxic chemicals by smoking cigarettes—it applied only to work with or in close proximity to toxic chemicals themselves.  In this case, the premise underlying plaintiffs' argument—that they are entitled to additional compensation for work with or in close proximity to people infected with COVID-19, or objects and surfaces those individuals may have contacted, without more—is flawed for the same reasons the Federal Circuit found the plaintiffs' argument flawed in *Adair*.  Because the regulations require work with or in close proximity to a "virulent biological" or a "micro-organism" itself, plaintiffs cannot state a claim based solely on alleged work with or in close proximity to "objects, surfaces, and/or individuals infected with COVID-19."

Second, even if hazardous duty or environmental differential pay were available for work with or in close proximity to "objects, surfaces, and/or individuals infected with COVID-19," the

complaint contains insufficient facts to raise a plausible inference that plaintiffs performed such work.  Although the complaint seeks individual relief for each of the 188 named plaintiffs, the complaint contains no factual content describing the nature of each plaintiff's duties, how those duties required work with or in close proximity to "objects, surfaces, and/or individuals infected with COVID-19," or when those duties were performed.  Absent such facts, the complaint fails to state a plausible claim for relief.

The complaint also alleges a third claim under the Fair Labor Standards Act (FLSA) for overtime pay (Count III) for overtime hours worked during times that plaintiffs allege they were entitled to hazardous duty and environmental differential pay.  Because this claim is derivative of the claims for hazardous duty and environmental differential pay, which should be dismissed, Count III should be dismissed, as well.

We appreciate the challenging circumstances under which plaintiffs work and certainly do not contend that none could ever qualify for hazardous duty or environmental differential pay. However, this complaint advances claims premised on an incorrect legal standard and presents insufficient factual content to support such claims under the correct legal standard.  To the extent plaintiffs seek additional compensation for work with or in close proximity to "objects, surfaces, and/or individuals infected with COVID-19," their remedy is legislative or administrative, not judicial.  As we demonstrate further below, Congress has introduced proposals to compensate employees for working in environments where they may be exposed to COVID-19, as plaintiffs allege here.  And, if warranted, the Office of Personnel Management (OPM) could amend its schedules of pay differentials to include "work with or in close proximity to objects, hazards, and/or individuals infected with COVID-19," as requested in the complaint.  5 C.F.R. § 550.903(b); Fed. Wage Sys. Operating Manual, § S8-7e.  However, the existing statutory and

regulatory programs do not extend to work with or in close proximity to individuals infected with COVID-19, or the objects or surfaces those individuals contact.  If they did, then an employee would only need to show that he or she worked "in close proximity to" an "object or surface" contacted by a COVID-19-infected individual to qualify.  The financial burden on the United States under such a legal regime would be extraordinary.

Finally, in the event that the complaint survives this motion to dismiss, the Court should order plaintiffs to amend their complaint to include a more definite statement of their claims pursuant to Rule 12(e).  Given the absence of any information at all about 186 of the 188 named plaintiffs, the complaint "is so vague or ambiguous that the [Government] cannot reasonably prepare a response."  RCFC 12(e).

<u>ISSUES PRESENTED</u>

1.      Whether any plaintiff states a claim upon which relief can be granted for hazardous duty or environmental differential pay (Counts I-II) when the regulations do not extend to work with or in close proximity to "objects, surfaces, and/or individuals infected with COVID-19," and the complaint contains no facts from which the Court could plausibly infer that any of the 188 plaintiffs performed work meeting the actual regulatory requirement of "working with or in close proximity to" "virulent biologicals" or "micro-organisms."

2.      Whether any plaintiff states a claim upon which relief can be granted for additional FLSA overtime pay (Count III) related to owed-but-unpaid hazardous duty or environmental differential pay when no plaintiff has stated an underlying claim for hazardous duty or environmental differential pay.

3.      In the alternative, whether the complaint should be amended to provide a more

definite statement setting forth facts sufficient to support each plaintiff's hazardous duty or

environmental differential pay claim.

## STATEMENT OF FACTS

I.     Statutory And Regulatory Background

In 1966, Congress authorized OPM to create a program to pay additional compensation at

fixed rates (hazard pay differentials) to Federal civilian employees "for duty involving unusual

physical hardship or hazard." *Adair*, 497 F.3d at 1253-54; *see also* Pub. L. No. 89-512, § 1, 80

Stat. 318, 318 (1966).  Before Congress enacted legislation authorizing those pay differentials,

only certain military personnel and public-health-service employees were eligible for additional

hazard-related compensation, but not civilian employees, "even those who labored beside

[eligible] individuals, doing the same work." *Adair*, 497 F.3d at 1253.  To the extent that

unusual physical hardships or hazards were part of a General Schedule employee's duties, the

employee would receive compensation through the classification system; however, no

mechanism existed to compensate an employee for performing assignments involving unusual

physical hardships or hazards, which his or her classification did not encompass.  *Id.* at 1253-54

(citing H.R. Rep. No. 89-31 at 2 (1965)).

Accordingly, in 1966, Congress established the hazardous duty pay program as a gap-

filling measure to compensate General Schedule employees in those unique cases when they are

assigned to "take unusual risks not normally associated with [their] occupation[s] and for which

added compensation is not otherwise provided[.]"  *Id.* at 1254 (quoting H.R. Rep. No. 89-31 at 2

(1965)).  Six years later, in 1972, Congress enacted a similar program for Federal Wage System

employees, which authorized environmental differential pay to compensate them for performing

"duty involving unusually severe working conditions or unusually severe hazards."  Pub. L. No. 92-392, § 5343(c)(4), 86 Stat. 564, 567 (1972).

      A.     <u>5 U.S.C. § 5545(d) (Hazardous Duty Pay)</u>

There are two scenarios that qualify for payment of a hazardous duty pay differential: (1) "duty involving physical hardship"; and (2) "hazardous duty."  5 C.F.R. § 550.902.  "Duty involving physical hardship" refers to performing tasks in unusually harsh environments—*e.g.,* "exposure to extreme temperatures for a long period of time, arduous physical exertion, or exposure to fumes, dust, or noise that causes nausea, skin, eye, ear, or nose irritation"—when protective measures cannot adequately alleviate "the extreme physical discomfort or distress." *Id.*  "Hazardous duty" refers to work "performed under circumstances in which an accident could result in serious injury or death, such as duty performed on a high structure where protective facilities are not used or on an open structure where adverse conditions such as darkness, lightning, steady rain, or high wind velocity exist." *Id*

In 5 C.F.R., Part 550, Subpart I, Appendix A, OPM promulgated a Schedule of Pay Differentials Authorized for Hazardous Duty Pay, which sets forth approximately 60 categories of duties comprising either "duty involving physical hardship" or "hazardous duty."  5 C.F.R. pt. 550, subpt I, App'x A.  These duties include experimental parachute jumps, participating as a test subject in centrifuge studies involving highly-elevated G forces, work on a drifting sea ice floe, work in confined spaces in temperatures above 110 degrees, tropical jungle duty, and, as relevant to this case, "work with or in close proximity to . . . [v]irulent biologicals." *Id.* "Virulent biologicals" refer to materials with the following characteristics: (1) they are of micro-organic nature; (2) serious disease or fatality is likely to result when they are introduced into the body; and (3) protective devices do not afford complete protection. *Id.*, Exposure to Hazardous Agents ¶ (5).  Although Appendix A does not provide examples of when an employee "work[s]

6

with or in close proximity to . . . virulent biologicals," earlier OPM guidance explained that such

assignments would include tasks, such as the following:

- Operating or maintaining equipment in biological experimentation or production.

- Cleaning and sterilization of vessels and equipment contaminated with virulent micro-organisms.

- Caring for or handling disease-contaminated experimental animals in biological experimentation and production in medical laboratories, the primary mission of which is research and development not directly associated with patient care.  This includes manipulating animals infected with virulent organisms, such as inoculating of animals, obtaining blood and tissue specimens, and disposing of excreta and contaminated bedding and cages.

- Cultivating virulent organisms on artificial mediums, including embryonated hen's eggs and tissue cultures where inoculation or harvesting of living organisms is involved for production of vaccines, toxides, etc., or for sources of material for research investigations such as antigenic analysis and chemical analysis.

Background Info. on App'x A to Part 550, Fed. Personnel Manual, Supp. 990-2 § 550-E-4, 1973

WL 151518 (1973).[2]

The U.S. Civil Service Commission, OPM's predecessor, which drafted these examples,

stated that they "are intended to serve as an aid to agencies in determining what situations a

hazardous duty described in Appendix A to part 550 covers" and "reflect[] some of the facts the

Commission considered in making its determination to authorize a hazard differential[.]"  *Id.*

---

[2]  Although OPM has since retired the Federal Personnel Manual, the Federal Circuit regards it as a "valuable resource when construing regulations that were promulgated or were in effect" before OPM retired that Manual.  *See Schmidt v. Dep't of Interior*, 153 F.3d 1348, 1353 n.4 (Fed. Cir. 1998).

Section 550.904(a) specifies when hazardous duty pay is required:

> An agency shall pay the hazard pay differential listed in Appendix A of
> this subpart to an employee who is assigned to and performs any duty
> specified in Appendix A of this subpart.  However, hazard pay differential
> may not be paid to an employee when the hazardous duty or physical
> hardship has been taken into account in the classification of his or her
> position . . . unless payment of a differential has been approved under
> paragraph (b) of this section.

*Id.* § 550.904(a).

Section 550.904(b) specifies when hazardous duty pay is discretionary:

> The head of an agency may approve payment of a hazard pay differential
> when — (1) The actual circumstances of the specific hazard or physical
> hardship have changed from that taken into account and described in the
> position description; and (2) Using the knowledge, skills, and abilities that
> are described in the position description, the employee cannot control the
> hazard or physical hardship[.]

*Id.* § 550.904(b).

Thus, to demonstrate entitlement to hazardous duty pay for work with or in close

proximity to COVID-19 pursuant to 5 C.F.R. § 550.904(a), an employee must show the

following:

(1)    The employee was "assigned to and perform[ed]" "work[] with or in close
       proximity" to COVID-19.  5 C.F.R. § 550.904(a); 5 C.F.R., pt. 550, subpt. I,
       App'x A.

(2)    COVID-19 is a "virulent biological" because "when introduced into the human
       body [it is] likely to cause significant injury or death," and "protective devices are
       insufficient to afford protection."  5 C.F.R., pt. 550, subpt. I, App'x A.

(3)    The employee's job classification does not already "take[] into account" work
       with or in close proximity to virulent biologicals.  5 C.F.R. § 550.904(a).

The burden of proof rests on the employee to prove each of these elements.  *O'Neall v.*

*United States*, 797 F.2d 1576, 1582-83 (Fed. Cir. 1986) (in construing the related regulatory

scheme governing environmental differential pay, the Federal Circuit held that "[e]mployees

bear the burden of proof of entitlement").

B.     5 U.S.C. § 5343(c)(4) (Environmental Differential Pay)

Although hazardous duty pay is only available for certain General Schedule employees,

Congress delegated to OPM authority through 5 U.S.C. § 5343(c)(4) to implement a similar

scheme for Federal Wage System employees who perform "[d]uties involving unusually severe

working conditions or unusually severe hazards."  5 U.S.C. § 5343(c)(4).  In turn, OPM

promulgated 5 C.F.R. § 532.511, which authorizes "environmental differential pay" when an

employee is "exposed to a working condition or hazard that falls within one of the categories

approved by OPM."  5 C.F.R. § 532.511.  OPM identified approximately 50 categories of

unusually severe working conditions or hazards, one of which is "work[] with or in close

proximity to . . . micro-organisms" where safety precautions "have not practically eliminated the

potential for personal injury."  5 C.F.R., pt. 532, subpt. E, App'x A.

Within the "micro-organisms" category, the appendix provides separate pay differentials

for high degree (8%) and low degree hazards (4%).  *Id.*  High degree hazards "involve[] potential

personal injury such as death, or temporary, partial, or complete loss of faculties or ability to

work due to acute, prolonged, or chronic disease."  *Id.*  The regulation provides the following

examples of high degree hazards:

- Direct contact with primary containers of organisms pathogenic for man such as culture flasks, culture test tubes, hypodermic syringes and similar instruments, and biopsy and autopsy material.  Operating or maintaining equipment in biological experimentation or production.

- Cultivating virulent organisms on artificial media, including embryonated hen's eggs and tissue cultures where inoculation or harvesting of living organisms is involved for production of vaccines, toxides, etc., or for sources of material for research investigations such as antigenic analysis and chemical analysis.

*Id.*

Low degree hazards involve work that "does not require the individual to be in direct contact with primary containers of organisms pathogenic for man, such as culture flasks, culture test tubes, hypodermic syringes and similar instruments, and biopsy and autopsy material[.]"  *Id.*

Plaintiffs here allege entitlement to environmental differential pay for both high degree and low degree hazards.  To demonstrate entitlement to environmental differential pay with or in close proximity to a micro-organism (low degree), an employee must show the following:

(1)    The employee "work[ed] with or in close proximity to" COVID-19.  5 C.F.R. pt. 532, subpt. E, App'x A.

(2)    COVID-19 is a "micro-organism" and safety precautions have not "practically eliminated the potential for personal injury."  5 C.F.R. § 532.511(d); 5 C.F.R. pt. 532, subpt. E, App'x A.

Further, to demonstrate entitlement to environmental differential pay for work with or in close proximity to a micro-organism (high degree), an employee must show the elements above, plus show that:

(3)    The work "involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease."  5 C.F.R., pt. 532, subpt. E, App'x A.

The burden of proof rests on the employee to prove each of these elements.  *O'Neall*, 797 F.2d at 1582-83.

C.    5 C.F.R. §§ 551.511-12 (FLSA Overtime Pay)

Under the FLSA, an "agency must compensate its overtime-eligible employees 'for all hours of work in excess of 8 in a day or 40 in a workweek at a rate equal to one and one-half times the employee's hourly regular rate of pay,' subject to certain exceptions[.]"  *Alamo v. United States*, 850 F.3d 1349, 1351 (Fed. Cir. 2017) (quoting 5 C.F.R. § 551.501(a)).  "An employee's 'hourly regular rate' is computed by dividing the total remuneration paid to an employee in the workweek by the total number of hours of work in the workweek for which such

compensation was paid."  5 C.F.R. § 551.511(a); *see also id.* § 551.511(b) (specifying types of pay excluded from "total remuneration").

II.    The Complaint

Plaintiffs comprise 188 current and former employees of FCI Danbury.  *See* Compl., Caption, ¶ 1.   Plaintiffs allege that COVID-19 spreads easily through objects, surfaces, and individuals, *id.* ¶¶ 20-24, and plaintiffs allege that more than 100 FCI Danbury inmates and employees have been infected with the disease, *id.* ¶ 17; thus, plaintiffs assert that, by working at FCI Danbury, they performed "work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19[,]" *id.* ¶ 25.  Plaintiffs further allege that they did not have "sufficient protective devices" when they performed that work and that BOP "has not taken any action to protect the plaintiffs from exposure to COVID-19."  *Id.* ¶¶ 25, 27.  Given these alleged circumstances, the 188 plaintiffs collectively assert that they are entitled to receive multiple forms of additional compensation.  Under Count I, plaintiffs seek 25% hazardous duty pay. *Id.* ¶ 37.  Under Count II, plaintiffs seek either (1) 8% environmental differential pay (high degree hazard); or (2) 4% environmental differential pay (low degree hazard).  *Id.* ¶¶ 45, 49. Further, because BOP has not included these forms of additional compensation into plaintiffs' "regular rate of pay," plaintiffs contend in Count III that their overtime pay has been "willful[ly] and purposeful[ly]" miscalculated to their detriment, and seek back pay, liquidated damages, attorney fees, and costs.  *Id.* ¶¶ 57-62, Prayer for Relief.

With respect to the 188 named plaintiffs, the complaint contains individual factual allegations about only two: Cody Adams is a Correctional Officer and Jennifer Angel is a Cook Supervisor.  *Id.* ¶¶ 3-4.  The complaint contains no further information about Mr. Adams or Ms. Angel.  Indeed, the complaint contains no facts at all concerning the following: (1) how and when any plaintiff was assigned to and performed work with or in close proximity to COVID-19;

11

and (2) the particular infected individuals, objects, or surfaces with which any plaintiff worked. Moreover, for any plaintiff seeking hazardous duty pay, the complaint contains no facts concerning (3) any plaintiff's job classification and how that classification does not already account for work with or in close proximity to virulent biologicals.

ARGUMENT

I.     <u>Standards Of Review</u>

      A.     <u>Motion To Dismiss For Failure To State A Claim Upon Which Relief May Be Granted</u>

Rule 12(b)(6) requires dismissal when a complaint fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To avoid dismissal for failure to state a claim under Rule 12(b)(6), "a complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Cos. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).[3]  A claim is facially implausible if it does not permit the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Allegations "that are 'merely consistent with' a defendant's liability" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  Moreover, in ruling on a motion to dismiss, the Court may consider the complaint "along with documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

---

[3]  This Court uses case law construing the Federal Rules of Civil Procedure to interpret this Court's rules. *Principal Life Ins. Co. v. United States*, 75 Fed. Cl. 32, 33 n.1 (2007).

In *Iqbal*, the Supreme Court clarified the two-step approach trial courts are to apply when considering motions to dismiss based on a failure to properly plead a cause of action.  *Iqbal*, 556 U.S. at 679-80.  First, a court should separate the complaint's allegations into two categories: (1) conclusory allegations, which do not merit the assumption of truth; and (2) well-pleaded factual allegations, which the court must accept as true.  *Id.*  Second, after isolating the well-pleaded factual allegations, the court should determine whether they plausibly state a claim for relief.  *Id.*; *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1355 (Fed. Cir. 2010).  This two-step approach strikes a balance between Rule 8's requirement that a plaintiff need only set forth a "short, plain statement of the claim," and the need to prevent "a plaintiff with a largely groundless claim" from "'tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of settlement value.'"  *Twombly*, 550 U.S. at 557-58 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

Significantly, the *Iqbal* pleading standard applies whether the complaint names a single plaintiff or, as in this case, multiple plaintiffs—in both scenarios, the complaint must contain sufficient factual content to show that each plaintiff states his or her own claim against the defendant.  *See* Fed. Practice & Procedure § 1656 (3d ed. Apr. 2020 update) ("In spite of the great liberality of Rule 20(a), the Rule does not excuse any of the joined parties from the obligation to state a claim against defendant or defendants upon which relief may be granted") (citing *Karmanos v. Baker*, 617 F. Supp. 809, 814 (E.D. Mich. 1985)); *see also Wynn v. Nat'l Broadcasting Co.*, 234 F. Supp. 2d 1067, 1085-88 (C.D. Cal. 2002).  Thus, when "each plaintiff's right to relief . . . depends on proof of the operative facts giving rise to an enforceable right in favor of that plaintiff," compliance with Rule 8 requires that "each plaintiff must plead a short and plain statement of the elements of his or her claim, identifying the transaction or

occurrence giving rise to the claim and the elements of the prima facie case[.]" *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

    B.    <u>Motion For A More Definite Statement</u>

Although vague and ambiguous pleadings are typically subject to dismissal under the *Iqbal* standard, in rare circumstances, a complaint may be sufficient to survive a motion to dismiss, even if it is so "vague or ambiguous that the [Government] cannot reasonably prepare a response." RCFC 12(e). In those cases, the Court has the power to "order a party to provide a more definite statement before moving forward with the proceedings." *3rd Eye Surveillance LLC v. United States*, 124 Fed. Cl. 438, 442 (2015) (citing *Wright v. United States*, 221 Ct. Cl. 913, 915 (1979)). Ordering a plaintiff to provide a more definite statement protects the defendant from the "possibility that he might be prejudiced by attempting to answer the pleading in its existing vague or ambiguous form." Fed. Practice & Procedure § 1377 (3d ed. Apr. 2020 update).

II.    Because The Complaint Fails To State Claims For Either Hazardous Duty Or
       <u>Environmental Differential Pay, Counts I-II Should Be Dismissed</u>

In this case, both a General Schedule employee seeking hazardous duty pay (Count I) and a Federal Wage System employee seeking environmental differential pay (Count II) must show, among other things, that he or she "work[ed] with or in close proximity" to a "virulent biological" or "micro-organism." 5 C.F.R., pt. 550, subpt. I, App'x A; 5 C.F.R., pt. 532, subpt. E, App'x A. In addition, a General Schedule employee seeking hazardous duty pay must also show that his or her job classification does not already account for that work. 5 C.F.R. § 550.904(a). Plaintiffs bear the burden of proof with respect to each element, *O'Neall*, 797 F.2d at 1582-83, and failure to sufficiently allege any element requires dismissal of the entire claim, *see Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006).

Under plaintiffs' theory of the case, because (1) COVID-19 allegedly qualifies as a "virulent biological" or "micro-organism," and (2) more than 100 inmates and staff at FCI Danbury were allegedly confirmed as infected with COVID-19 as a result of their own exposure to that disease, plaintiffs conclude that (3) any work at FCI Danbury constitutes "work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19[.]"  Compl. ¶¶ 17-21, 25.  As a result, plaintiffs allege that they are entitled to either hazardous duty or environmental differential pay on an ongoing basis.  *Id.* ¶¶ 36-37, 48-50.

The complaint fails to state a claim for several reasons.  First, plaintiffs' claims for hazardous duty and environmental differential pay rely on language that does not exist in the regulations.  OPM authorized hazardous duty and environmental differential pay for "work with or in close proximity to" "virulent biologicals" and "micro-organisms"—not "work with or in close proximity to *objects, surfaces, and/or individuals infected with*" "virulent biologicals" or "micro-organisms."  *Compare* 5 C.F.R. pt. 550, subpt. I, App'x A; 5 C.F.R. pt. 532, subpt. E, App'x A, *with* Compl. ¶¶ 25, 30 (emphasis added).  Second, even if the regulations extended to work with or in close proximity to "objects, surfaces, and/or individuals infected with COVID-19," as opposed to work with or in close proximity to a "virulent biological" or "micro-organism" itself, the complaint lacks sufficient factual content from which the Court could plausibly infer that any of the 188 plaintiffs engaged in such work.

Finally, the hazardous duty pay claim also fails because the complaint alleges no facts to show that any plaintiff's job classification does not already "take[] into account" work with or in close proximity to virulent biologicals.  5 C.F.R. § 550.904(a).

Accordingly, because plaintiffs' claims for hazardous duty and environmental differential pay rely on an incorrect reading of the regulations, and in any event, the complaint does not

allege sufficient facts from which the Court could infer liability under any legal theory, Counts I and II should be dismissed.

A.    The Complaint Does Not Plausibly Allege That Any Plaintiff Worked With Or In Close Proximity To A Virulent Biological Or Micro-Organism

To state claims for either hazardous duty or environmental differential pay, the complaint must sufficiently allege facts showing that each plaintiff was required to perform "work with or in close proximity to" a "virulent biological" or "micro-organism." 5 C.F.R., pt. 550, subpt. I, App'x A; 5 C.F.R., pt. 532, subpt. E, App'x A. The complaint fails to state this essential element of plaintiffs' hazardous duty and environmental differential pay claims.

1.    Plaintiffs' Hazardous Duty And Environmental Differential Pay Claims Rely On An Incorrect Legal Theory

Plaintiffs' assertion that they performed "work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19," Compl. ¶¶ 25, 30, does not support their entitlement to hazardous duty and environmental differential pay. Federal Circuit precedent and OPM's regulations make clear that "work with or in close proximity to" either a "virulent biological" or "micro-organism" refers to assignments such as cultivating virulent tissue cultures, and operating or maintaining equipment in biological experimentation or production.

In *Adair*, the Federal Circuit interpreted a parallel provision in the environmental differential pay regulation, which authorizes additional compensation for "work with or in close proximity to . . . toxic chemicals," and determined that the provision did not encompass work with or in close proximity to second-hand smoke. *Adair*, 497 F.3d at 1258. In reaching this determination, the Federal Circuit examined the regulatory examples reflecting "work with or in close proximity to toxic chemicals," which include "marking, storing, neutralizing, operating, preparing, analyzing, transferring, disposing, or otherwise handling toxic chemicals." *Id.* Given

that context, the Federal Circuit construed "work with or in close proximity to toxic chemicals" to mean "scenarios where the job assignment requires directly or indirectly working *with* toxic chemicals or containers that hold toxic chemicals as part of a job assignment," not "work[ing] with inmates who incidentally smoke." *Id.* (emphasis in original).[4]  Accordingly, the Federal Circuit determined that "work with or in close proximity to toxic chemicals" does not encompass work with inmates who emit cigarette smoke because even if cigarette smoke *contains* toxic chemicals, the regulation requires an employee to "work with or in close proximity to" actual toxic chemicals themselves, rather than "work with or in close proximity to" cigarette smokers. *Id.*

The phrase "work with or in close proximity to" must be read the same way in this case, when applied to "virulent biologicals" and "micro-organisms," as the Federal Circuit read that phrase in *Adair*, when applied to "toxic chemicals."  *See Sullivan v. Stroop*, 496 U.S. 478, 483-85 (1990) ("identical words" used in related programs are intended to have the same meaning); *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 501 (1998) ("similar language contained within the same section of a statute must be accorded a consistent meaning"). Thus, an employee may only be eligible for hazardous duty or environmental differential pay if he or she were assigned to and performed "work with or in close proximity to" a "virulent biological" or "micro-organism" itself.

---

[4]  Consistent with this reasoning, OPM understands its regulations to mean that hazardous duty and environmental differential pay are unavailable if "an employee [may have come] in contact with the virus or another similar virus through incidental exposure to the public or other employees who are ill rather than being exposed to the virus during the performance of assigned duties."  OPM Memorandum No. 2020-05, Attach. A at 12 (Mar. 7, 2020), *available at* https://go.usa.gov/xG2KS (last visited Oct. 8, 2020) (cited at Compl. ¶ 18).

OPM regulations also compel this conclusion.  In the environmental differential pay regulations, OPM provides examples reflecting "work with or in close proximity to . . . micro-organisms."  These duties include the following: "[o]perating or maintaining equipment in biological experimentation or production," "[c]ultivating virulent organisms on artificial media," and "direct contact with primary containers of organisms pathogenic for man such as culture flasks, culture test tubes, hypodermic syringes and similar instruments, and biopsy and autopsy material."  5 C.F.R., pt. 532, subpt. E, App'x A.

With respect to hazardous duty pay, although the current regulation does not include examples, OPM's original guidance demonstrates OPM's understanding that the following types of duties are covered: operating equipment in biological experimentation or protection; cleaning and sterilizing vessels contaminated with virulent micro-organisms; cultivating virulent organisms on artificial mediums; and caring for or handling disease-contaminated experimental animals in biological experimentation and production in medical laboratories, the primary mission of which is research and development not associated with patient care.  Fed. Personnel Manual, Supp. 990-2 § 550-E-4; *Schmidt*, 153 F.3d at 1353 n.4 (noting that the Federal Personnel Manual is a "valuable resource when construing regulations that were promulgated or were in effect" before the Manual's retirement).  Although these examples are not exhaustive, they share some common characteristics: experimentation or research using hazardous micro-organic material, or cleaning contaminated scientific equipment.

In this case, we do not take the position that an employee could never state a claim for hazardous duty or environmental differential pay if he or she alleged facts describing how a particular assignment involving COVID-19-infected objects, surfaces, and/or individuals constituted "work with or in close proximity to" a "virulent biological" or "micro-organism."

Indeed, OPM contemplates that the regulations encompass duties such as "cleaning and sterilizing[ing] . . . vessels and equipment contaminated with virulent micro-organisms" and "direct contact with primary containers of organisms pathogenic for man such as culture flasks, culture test tubes, hypodermic syringes and similar instruments, and biopsy and autopsy material." 5 C.F.R., pt. 532, subpt. E, App'x A; *see also* Fed. Personnel Manual, Supp. 990-2 § 550-E-4. The problem with plaintiffs' reading of the regulation is that it would mandate additional compensation for nothing more than being "in close proximity to" a sick individual, or an object on which an infected individual may have coughed, exhaled, or sneezed.  Compl. ¶¶ 21-23.  As we demonstrated above, neither the regulations themselves nor precedent construing those regulations support plaintiffs' over-inclusive reading.

Moreover, plaintiffs' reading of the existing regulations to require only work assignments with or in close proximity to "objects, surfaces, and/or individuals infected with COVID-19" would impose an administrative and financial burden on agencies beyond that intended by the governing statute and regulations.  It would require agencies to make hour-by-hour, day-by-day, employee-by-employee determinations as to whether a particular employee came "in close proximity to" an object, surface, and/or individual infected with COVID-19, without regard to the employee's actual assignment.  Moreover, mandating hazardous duty and environmental differential pay for work with or in close proximity to "objects, surfaces, and/or individuals infected with COVID-19" would impose extraordinary financial burdens on the agencies because it could require paying additional compensation to virtually all on-site Federal workers.[5]

---

[5]  Indeed, the Heroes Act, discussed in the following paragraph, would have required an initial appropriation of $10 billion to fund "Pandemic Duty Differential" payments.  H.R. 6800, 116th Cong. (2020), § 170202(d).

Finally, we note that Congress recently introduced legislation to provide Federal workers

with pay differentials for working with or in close proximity to individuals infected with

COVID-19, which further demonstrates that the existing statutory and regulatory schemes do not

already encompass such work.  For instance, the proposed Heroes Act, which was passed by the

House of Representatives on May 15, 2020, would have established a $13/hour "Pandemic Duty

Differential" for Federal employees who either (1) "have regular or routine contact with the

public" or (2) "report to a worksite" where "social distancing is not possible" and "other

preventative measures with respect to COVID-19 are not available[.]"  H.R. 6800, 116th Cong.

(2020), § 170202(a)(1), (b).[6]  The proposed Federal Workforce Health and Safety During the

Pandemic Act would have provided the same benefits.  H.R. 7431, 116th Cong. (2020), §

7(b)(1)(A), (B).  Another proposal, the Hazardous Duty Pay for Frontline Federal Workers Act,

would have amended 5 U.S.C. § 5545 to authorize OPM to "establish a schedule or schedules of

pay differentials for duty during which an employee is exposed to an individual who has (or who

has been exposed to) COVID-19."  H.R. 6655, 116th Cong. (2020), § 2.

Moreover, OPM possesses authority to amend its Schedules of Hazardous Duty Pay

Differentials to include a separate category for work with or in close proximity to "objects,

surfaces, and/or individuals infected with COVID-19."  5 C.F.R. § 550.903(b).  OPM also

possesses authority to amend its Schedule of Environmental Differentials to add or change a

category of work eligible for environmental differential pay on its own motion, at the request of

an agency, or at the request of the national office of a labor organization, and after receiving the

advice of the Federal Prevailing Rate Advisory Committee.  Fed. Wage Sys. Operating Manual,

---

[6]  On October 1, 2020, the House of Representatives passed a version of the Heroes Act
(Heroes Act 2.0), which does not include a pandemic duty differential.  H.R. 8406, 116th Cong.
(2020).

§ S8-7e.  Thus, to the extent that plaintiffs seek additional compensation for any "work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19," their remedy is legislative or administrative, not judicial.

> 2.    Even Under Plaintiffs' Incorrect Legal Theory, The Complaint Lacks Sufficient Factual Content From Which The Court Could Plausibly Infer That Any Of The 188 Plaintiffs Worked With Or In Close Proximity To "Objects, Surfaces, And/Or Individuals Infected With COVID-19"

Even if the hazardous duty and environmental differential pay regulations extended to "work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19," the complaint still lacks any facts from which the Court could plausibly infer that any of the 188 plaintiffs performed such work.  Although the complaint alleges that "more than 100 employees and inmates of FCI Danbury have been confirmed to be infected with COVID-19," Compl. ¶ 17, the complaint alleges no facts that could support a plausible inference that any of the named plaintiffs was assigned to work with any of those employees or inmates.[7]  Indeed, the complaint identifies no job assignment performed by any plaintiff, the infected "object, surface, and/or individual" with which any plaintiff worked, when that assignment was performed, or any other details from which the Court could plausibly infer that any plaintiff performed "work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19."  *Id.* ¶¶ 25, 30.

Under *Iqbal*, the absence of any such factual content is fatal to plaintiffs' hazardous duty and environmental differential pay claims.  *Iqbal*, 556 U.S. at 678-80.

---

[7]  In any event, as previously articulated, OPM interprets its regulations to mean that hazardous duty and environmental differential pay are unavailable if "an employee [may have come] in contact with the virus or another similar virus through incidental exposure to the public or other employees who are ill rather than being exposed to the virus during the performance of assigned duties."  OPM Memorandum No. 2020-05, Attach. A at 12 (Mar. 7, 2020).

3.      The Complaint's Allegations Concerning Protective Measures
(Or Lack Thereof) Do Not Illuminate Whether Any Plaintiff
Performed Work With Or In Close Proximity To COVID-19

Finally, the complaint alleges that plaintiffs performed work "without sufficient protective devices" and that BOP had done nothing to "protect the plaintiffs from exposure to COVID-19 at FCI Danbury."  Compl. ¶¶ 25, 27; *see also id.* ¶¶ 36, 48.  But the existence and sufficiency of protective devices speaks to whether COVID-19 qualifies as a "virulent biological" or "micro-organism," 5 C.F.R., pt. 550, subpt. I, App'x A; 5 C.F.R. pt. 532, subpt. E, App'x A; it does not inform whether any plaintiff worked with or in close proximity to COVID-19 in the first place, and does not bolster their otherwise deficient claims.

B       Plaintiffs' Hazardous Duty Pay Claim Also Fails Because The Complaint Does
Not Plausibly Allege That Work With Or In Close Proximity To Virulent
Biologicals Has Not Been Taken Into Account In Plaintiffs' Job Classifications

Finally, even if the complaint alleged sufficient facts to show work with or in close proximity to a virulent biological, any plaintiff seeking hazardous duty pay would also need to plausibly allege that work with or in close proximity to virulent biologicals has not been "taken into account in the classification of his or her position." 5 C.F.R. § 550.904(a), (c).  The complaint contains no facts concerning any plaintiff's job classification.

Because an underlying purpose of hazardous duty pay is to compensate an employee for "unusual physical hardship or hazard" that is beyond the scope of the employee's ordinary duties, to demonstrate entitlement to hazardous duty pay, a plaintiff must allege sufficient factual content to show "the hazardous duty or physical hardship has [not] been taken into account in the classification of his or her position[.]"  5 C.F.R. 550.904(a).  The classification need not specifically identify the hazardous duty or physical hardship by name.  Pursuant to OPM regulations, "'taken into account in the classification of his or her position'. . . means that the

22

duty constitutes an element considered in establishing the grade of the position—*i.e.*, the knowledge, skills, and abilities required to perform that duty are considered in the classification of the position." 5 C.F.R. § 550.904(c). Thus, a plaintiff seeking hazardous duty pay must allege sufficient facts to support a plausible inference that his or her job classification does not already incorporate the knowledge, skills, and abilities required to work with or in close proximity to a virulent biological. *See Iqbal*, 556 U.S. at 678.

Instead of alleging facts that would support this essential element, the complaint simply asserts that "[e]xposure to objects, surfaces, and/or individuals infected with COVID-19 was not taken into account in the classification of plaintiffs' position." Compl. ¶ 26. Putting aside that the complaint's assertion misstates the legal standard, plaintiffs allege no facts to support even that assertion. *Id*. The complaint names 188 plaintiffs, but only identifies the positions held by two of them, and provides the classification for none of them. *Id*. ¶¶ 3-4. The absence of such factual content in the complaint further compels dismissal of Count I.

III.   **Because The Complaint Fails To Demonstrate Entitlement To Additional Overtime Pay Under The FLSA, Count III Should Be Dismissed**

In Count III of the complaint, plaintiffs allege that they were underpaid their overtime pay under the FLSA because their pay rates failed to account for owed-but-unpaid hazardous duty or environmental differential pay. In advancing this FLSA claim, plaintiffs do not allege that they performed any overtime work for which they did not receive pay; rather, they contend that the overtime pay they received was insufficient because it did not account for their entitlement to hazardous duty or environmental differential pay. But Count III erroneously presupposes that plaintiffs have established their entitlement to either type of pay in the first place. Thus, because Count III is dependent upon the viability of Counts I and II, and Counts I and II fail to state a claim, Count III should also be dismissed.

IV.   In The Alternative, The Court Should Order Plaintiffs To Provide A More Definite
      Statement Of Their Claims

Because the complaint is legally and factually defective, Rule 12(b)(6) compels its

dismissal.  However, if the Court were to determine that dismissal is not warranted, the Court

should order plaintiffs to amend their complaint to provide a more definite statement of each

plaintiff's individual claims.

As alleged, the complaint is "too vague or ambiguous" for the United States to file a

meaningful response.  RCFC 12(e).  A key problem is that the complaint names 188 individual

plaintiffs, but provides no factual information about any of them, except to allege that Cody

Adams is a Correctional Officer and Jennifer Angel is a Cook Supervisor at FCI Danbury.

Compl. ¶¶ 3-4.  Indeed, the complaint alleges that the 188 plaintiffs include both current and

former employees of FCI Danbury, and that they all performed work with or in close proximity

to objects, surfaces, and/or individuals infected with COVID-19 within the "past six years."

*Id.* ¶¶ 3-5.  But according to documents cited in the complaint, "[t]his new virus and disease

were unknown before the outbreak began in Wuhan, China, in December 2019."[8]   Accordingly,

the complaint is ambiguous as to when COVID-19 first appeared at FCI Danbury, and whether

each plaintiff was even employed at that time.

Moreover, because the complaint seeks individual relief for each of the 188 plaintiffs, the

complaint must allege sufficient facts to show that each plaintiff's claim can survive on its own.

*Bautista*, 216 F.3d at 840.  Resolution of each plaintiff's claim will require an independent

factual inquiry into the nature of his or her duties and, for plaintiffs seeking hazardous duty pay,

---

[8]  *See* World Health Org., Q&A on coronaviruses (COVID-19) (Apr. 17, 2020), *available at*
https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (last visited Oct. 8, 2020) (cited at
Compl. ¶ 24).

his or her position classification.  *See Jaynes v. United States*, 69 Fed. Cl. 450, 459 (2006) (requiring Navy shipwrights seeking environmental differential pay for "high work" to submit individualized proof of their claims given that each plaintiff's entitlement was "highly dependent on each plaintiff's individual experience").  Thus, even if some plaintiffs may ultimately be able to allege sufficient facts to support their claims, the Court would significantly streamline this case by dismissing those plaintiffs who could not meet this burden.

Accordingly, in the event that the Court does not dismiss the complaint, the Court should order plaintiffs to amend their complaint to provide the following information for each plaintiff:

- Whether plaintiff is a current or former employee at FCI Danbury and, if a former employee, when that employment relationship ended;

- Whether plaintiff seeks hazardous duty pay, or environmental differential pay at either the 4% rate (low degree hazard) or 8% rate (high degree hazard); and

- Facts tending to show that plaintiff was assigned to and performed work with or in close proximity to COVID-19.

Moreover, if a plaintiff seeks hazardous duty pay, that plaintiff must also provide:

- His or her job classification and a factual explanation as to why it does not already account for knowledge, skills, and ability necessary to work with or in close proximity to a virulent biological.

Finally, if a plaintiff seeks environmental differential pay for work with or in close proximity to COVID-19 at the 8% rate (high degree hazard), that plaintiff must also provide:

- Facts tending to show that his or her work "involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease."  5 C.F.R., pt. 532, subpt. E, App'x A.

Although plaintiffs need not identify every incident in which they claim to have performed required work with or in close proximity to COVID-19 at the pleading phase, each of the 188 plaintiffs must sufficiently allege enough details so the United States can investigate his or her allegations and provide a meaningful response.  Accordingly, in the event the Court does

not dismiss the complaint, the Court should order plaintiffs to amend their complaint to include the information designated above, on a plaintiff-by-plaintiff basis.

CONCLUSION

For these reasons, the Court should dismiss the complaint for failure to state a claim upon which relief can be granted or, in the alternative, order plaintiffs to amend their complaint to provide a more definite statement of each plaintiff's individual claims.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General


ROBERT E. KIRSCHMAN, JR.
Director


s/Allison Kidd-Miller
ALLISON KIDD-MILLER
Assistant Director

OF COUNSEL:

s/Eric E. Laufgraben

MARIE C. CLARKE                    ERIC E. LAUFGRABEN
DOUGLAS S. GOLDRING                Senior Trial Counsel
KATHLEEN HALEY HARNE               LIRIDONA SINANI
Office Of General Counsel          Trial Attorney
Federal Bureau of Prisons          Commercial Litigation Branch
U.S. Department of Justice         Civil Division
Washington, DC 20436               U.S. Department of Justice
                                   P.O. Box 480
                                   Ben Franklin Station
                                   Washington, DC 20044
                                   Telephone: (202) 353-7995
                                   Facsimile:  (202) 353-0461
                                   Email:      Eric.E.Laufgraben@usdoj.gov

October 8, 2020                    Attorneys for Defendant